JOHN POPOW, an Infant, by MIKE POPOW, Guardian ad Litem, Respondent, *v.* CENTRAL SCHOOL DISTRICT NO. 1 OF THE TOWNS OF HILLSDALE, COPAKE, CLAVERACK, TAGHKANIC, AUSTERLITZ, ANCRAM AND GALLATAN, COLUMBIA COUNTY, AND NORTH EAST, DUTCHESS COUNTY, NEW YORK, Appellant. (No. 1.)

MIKE POPOW, Respondent, *v.* CENTRAL SCHOOL DISTRICT NO. 1 OF THE TOWNS OF HILLSDALE, COPAKE, CLAVERACK, TAGHKANIC, AUSTERLITZ, ANCRAM AND GALLATAN, COLUMBIA COUNTY, AND NORTH EAST, DUTCHESS COUNTY, NEW YORK, Appellant. (No. 2.)

Hill, P. J., Rhodes, Crapser and Heffernan, JJ., concur; McNamee, J., dissents, with an opinion.

McNAMEE, J. (dissenting). The defendant is Central School District No. 1 of the towns of Hillsdale, Copake, Claverack, Taghkanic, Austerlitz, Ancram and Gallatin in Columbia county, and of the town of North East in Dutchess county. The board of education maintains a large central school, and also a local one-room grade school, known as the East Taghkanic school, which is attended by small children from that section in the first six grades, and which is located several miles distant from the central school. This local school property consists of a lot of about 60 by 150 feet, a school building, and two outdoor toilets, one of which, at the time in question, was removed from its foundation and was lying on its side on the ground. As appears from plaintiffs' Exhibit I, the school building is of modern construction for a small district school, and in good condition.

The infant plaintiff was between nine and ten years of age at the time in question, and was a pupil in the local school. He lived over a mile away, and with other pupils ate his lunch on the school grounds. During the noon hour of February 21, 1935, these children began the playing of a game in which they ran over the various parts of the school premises, which were covered with about six inches of snow. During this game, the infant plaintiff ran around and behind the outhouses, and sustained the injuries of which he complains.

The plaintiff submitted the testimony of himself, and three other school children ranging from nine to eleven years of age at the time of the accident, also that of the janitor, a trapper who passed through the school yard frequently before the accident, and a young woman who examined the premises two weeks thereafter, apparently at a time when no substantial change therein had occurred. From this testimony it appeared that the two toilet buildings were located in a corner of the lot and in the rear of the schoolhouse; and near thereto, between the line

fence and the toilets, were an ash heap, a discarded stove, and a quantity of other debris, consisting of pieces of boards, stones, discarded desk irons, and similar refuse, a sort of dumping place for the school. The vault of the toilet that had been removed from its base was open and unprotected. There was some testimony that the school grounds as a whole were littered with debris of the character above mentioned, but this evidence is not borne out by plaintiff's Exhibit I, a photograph of the schoolhouse and a substantial part of the grounds.

It is the evidence of the infant plaintiff himself, and his witnesses, that while running he tripped over a wire, and fell; and when he fell he struck his knee on a piece of iron or some other hard substance on the ground, and was thus injured. According to this testimony, the wire in question was strung from the bottom of a line fence post to and under the toilet building a few feet therefrom, and at an elevation of two or three inches from the ground. The place where he fell is not clearly identified, and the evidence in that respect is conflicting. But evidently it was at a point between the line fence and one of the toilets.

The complaint alleges, and much of the record was taken up with proof, that the defendant permitted the debris above mentioned to be strewn over the school grounds, and to thus remain there for a long time prior to the accident, and that thereby dangers were created. It was alleged, and the plaintiffs attempted to prove, that the defendant had full knowledge of this condition; that this condition continued for so long a period of time that a nuisance was thereby set up; and that the defendant, in the exercise of reasonable care should have known it, and accordingly was chargeable with constructive notice.

While it may be admitted for the purpose of discussion that the dumping ground and the rubbish thrown and allowed to remain in the corner of the school yard gave evidence of neglect on the part of the defendant, it was not the ash heap, the old stove, or the debris thrown and left there which caused plaintiff to fall, or brought about his injury. The wire in question was no part of the " dump," or of the debris shown to have been carelessly thrown there and left throughout the school year by the board of education. The evidence indicates that the wire was deliberately placed and fastened. It may be said that because of the evident neglect the infant plaintiff might easily have tripped over some other objects, and fallen on some other hard substance, or the frozen ground of mid-February. Such, of course, might have happened. But that is not the case here. According to such evidence as there was on the subject, the boy tripped over, and his injury was brought about by, a known and specified object.

The infant plaintiff and his other witnesses localized and pointed out the cause of his fall, viz., the wire stretched from the bottom of the fence post to a point under the toilet. The only inference, if any, to be drawn from the record, explaining where the wire came from, is that it was originally a part of the fence, and it was not shown who owned the fence. According to plaintiffs' witnesses this wire was attached at both ends, to the bottom of the fence post on one end and to the upright toilet building on the other, and two or three inches from the ground. The plaintiff had never seen this wire before, nor did any of the witnesses, except the witness Paul Popow who testified that he saw the wire there " a couple of days before John got hurt;" although the children had played on this small school lot from the beginning of the school year. Plaintiffs' witness, the trapper who " every morning " went over the place where the infant plaintiff fell, never saw

the wire in question. And the school teacher never saw a wire extending from the fence post to the toilet building. Thus according to any proof in the case, the only wire that was stretched from one point to another, and fastened on both ends, and over which the infant plaintiff tripped, was not known to any witness, and within the evidence could not have been a source of danger longer than two days before the accident.

There is no proof whatever of the purpose in stringing the wire, or how the wire came to be placed where it was when the infant plaintiff fell, and there is no proof to show who fastened the wire there. And the other facts in the case give no indication that it served as a guy wire, or could be thought to serve any useful purpose, at an elevation of two or three inches from the ground. There is not the slightest evidence in the case that the board of education placed the wire, had any responsibility for doing so, or knew it was there. And, of course, it could not be held that the board had constructive notice of the existence of the wire or its dangerous position, when it was not known to any one for a period longer than two days, and their attention was not drawn to it.

Under the statute the board of education is charged with the duty of providing safe and adequate school grounds, buildings and equipment. (Education Law, § 310.) These duties are not delegable. (*Lessin* v. *Board of Education*, 247 N. Y. 503, 511.) But such boards are not chargeable with the pranks of school children, nor with the intermeddling of other persons, which create dangerous conditions on the school grounds, unless they have knowledge or notice of the dangers created, or unless the dangers have existed for such a period of time that, in the exercise of reasonable care, they should have known and put an end to them. As was said by Lehman, J., in the *Lessin* case (p. 512), when affirming the order of dismissal as against the city, " It is not clear under all the circumstances that in the exercise of reasonable care by any of them such a danger should have been discovered." The verdict was without evidence to support it.

The judgment and order should be reversed and a new trial granted, with costs to abide the event.