EDWARD HOOSE, an Infant under Fourteen Years of Age, by ELLA HOOSE, His Guardian ad Litem, Appellant, *v.* S. S. DRUMM and Others, as Trustees of School District Number 1 of the Town of Stuyvesant, Columbia County, New York, Respondents.

Third Department, November 23, 1938.

*William E. J. Connor,* for the appellant.

*Murphy, Aldrich, Guy & Broderick [Morris Simon* of counsel], for the respondents.

Judgment and order affirmed, with costs.

HILL, P. J., RHODES and CRAPSER, JJ., concur; HILL, P. J., upon the ground that the injury was received on a portion of defendants' lands across the highway from the school and playground. It was unfenced and in the state in which nature had left it. Plaintiff was not invited to go thereon more than upon lands owned by a private individual. The injury was received through the act of another pupil, against which defendants could not and did not attempt to guard; McNAMEE, J., dissents, with an opinion; HEFFERNAN, J., dissents, with an opinion.

McNAMEE, J. (dissenting). The grade school in question had eighty-six pupils and five teachers, and the school grounds consisted of four and one-half acres located in a hamlet of more than 900 people. A period of play was allowed the children during the morning and afternoon sessions, when they were required to leave the building for exercise in the open air, on the school grounds. A country road divided the grounds in front of the school, and in the portion across the road was a depression or ravine obscured from view by the bank in which a large quantity of golden rod grew in the summer. This growth was not removed before the school opened, but was left standing, and the stalks dried and grew hard during the fall and winter.

The boys played in this ravine for many weeks before the accident in question. Their play consisted of stripping the stalks and then hurling them at each other after the manner of ancient battle with javelins. This field and its possibilities were an evident attraction to boys up to ten or twelve years of age, and from twenty to thirty

of them engaged in this practice, and from fifteen to thirty of these spears at a time were flying through the air during the progress of the game, with the result that four boys already had been injured. On February 16, 1937, one of the participants in this game was struck in the eye by a stalk, and thereby the sight of his eye was destroyed. The eye was removed. The question presented is whether the board of trustees met the common-law and statutory duty which it owed to the plaintiff.

By the provisions of section 273, subdivision 1, of the Education Law, the trustees of a school district must exercise their powers as a board. It has the duty to buy property for playgrounds and maintain them (§ 275, subd. 4), and it has the custody and " safe-keeping " of the school houses, sites and appurtenances (Subd. 5). Also, the board has the power and the duty to establish rules for the government and discipline of the schools (Subd. 9), and to keep the school houses and appurtenances in repair and make them reasonably comfortable for use (Subds. 14 and 15).

It is not questioned in the record that the ravine was on the school grounds, that no steps were taken by the board to remove the danger present by reason of the golden rod field, and that no provision was made to prevent the boys from playing there. And it is not contended that the board of trustees made any rules whatever. If the board had any duty to remove the golden rod or to prevent the dangerous use of the stalks, that duty was not performed by the board or by any one in its behalf.

This field of stalks was not only a dangerous attraction to little boys up to ten and twelve years old, but the danger was inherent in the premises, and its removal or " safe-keeping " was the non-delegable duty of the board. And no rule and no formal provision for supervision, if there were any, would justify or excuse the failure. The exercise of reasonable care on the part of the board to protect the children from this menace was the only defense available. Had the roof fallen in, or a floor given way, owing to the disregard of the board, it would be a vain answer to say that a rule had been adopted, or ineffectual supervision of the children had been provided. (*Lessin* v. *Board of Education*, 247 N. Y. 503, 511.) But here there was neither rule nor supervision, nor other provision, to safeguard the children from the danger inherent in the premises, and from the dangerous use of them, both of which the board itself knew or was bound to know, and the board itself permitted.

There is evidence that one of the four other boys who were previously injured at the same place and in the same manner, a week before the accident in question, reported to his teacher an injury to his eye, and was sent home for treatment. In and of itself this was notice to the board. (*Lessin* v. *Board of Education, supra,* 512.)

For long the courts appeared to have been disinclined to hold that school boards were responsible for such injuries to children on the school grounds as are reasonably contemplated from like and innocent causes in other places where children commonly congregate; that attendance upon public schools should not be permitted to be an occasion for claims and litigation based upon mishaps that are common to the play of children generally. But that general view, if ever justifiable, no longer seems secure. (*Popow* v. *Central School District No. 1, Town of Hillsdale*, 251 App. Div. 906; affd., 277 N. Y. 538.) In that case the familiar ash heap or " dump " was maintained by the school board on a secluded part of the grounds of a one-room district school, behind an outhouse, where the boy in that case was forbidden to play. At this cenobitic and forbidden point he tripped over a *particular* wire strung two or three inches from the ground, placed there the day before without knowledge or notice on the part of the board and evidently as a boyish prank. He fell and was injured on the frozen ground or something hard embedded therein. Recovery was permitted both in this court and in the Court of Appeals on the ground of nuisance, in that the board permitted debris to be strewn on the school playground without attempt at removal, and that " the playgrounds as so maintained constituted a nuisance."

Any difference in principle between the case under review and the *Popow* case that would defeat the plaintiff appears obscure indeed. There the plaintiff fell over a specified wire for which or for whose placement the board was not responsible, and struck his knee on a hard substance imbedded in the ground in February at or near the " dump " maintained by the board. Here the plaintiff was injured by a stalk thrown in a dangerous game by a little boy as a common practice from a field of stalks, which constituted an attractive nuisance maintained by the board; and, as the proof indicates, both sources of injury were known to the defendants.

As I view the case, the question of rules and supervision are not in the case. There were no rules. And, again, there was no such supervision as would be a substitute for the performance of the board's own duty. The ground of complaint was inherent in the premises and in the common use to which they were put. That was the board's concern.

On the authority of the cases mentioned above, the judgment and order should be reversed, and the verdict reinstated.

HEFFERNAN, J. (dissenting). I dissent from the conclusion of the majority and vote to reverse the judgment of dismissal and the order setting aside the verdict and to reinstate such verdict.

Plaintiff, a child ten years of age, was a pupil in the school of which defendants were trustees. On February 16, 1937, while on the school playground during a recess period, his eye was pierced by a stick of golden rod thrown by another pupil, resulting in the removal of the eye. Golden rod sticks were grown on the school grounds. These sticks, averaging five feet in length, were hard, sharp and dangerous. The children were accustomed to play with them during recess periods by throwing or shooting them with bows through the air. The proof discloses that on such occasions the air in the vicinity was literally filled with these missiles.

The statute (Education Law, § 275) makes it the duty of school trustees to employ competent persons to supervise playgrounds, to establish rules for the government and discipline of the schools and to keep school houses and their appurtenances reasonably comfortable for use and also to abate nuisances.

It is vain to argue that defendants established rules for the government and discipline of this school or that they exercised any supervision over the school site and its appurtenances. The minutes of the board of trustees demonstrate that no rules or regulations were ever adopted. In fact, the president of the board testified to the same effect. It is now asserted on behalf of the defendants that they made contracts with the teachers for that purpose. There is nothing in the minutes of the board to indicate that teachers were ever assigned to supervise the playgrounds. Singularly enough, the contracts with the teachers fail to disclose any such agreement. In any event, the question of whether or not teachers or any other persons were ever employed by defendants for the purpose of supervising the playgrounds was one of fact for the jury, and the evidence practically requires the finding that there was none. There is no substantial proof to the contrary.

For a period of from one to three weeks prior to the time plaintiff was injured the pupils at this school had been indulging in the dangerous practice of throwing these missiles. Four other children had been injured during that time. The teachers were aware of this, and certainly the trustees should have known it. The trustees were very familiar with the fact that the children used this particular lot for play. A reasonably competent and prudent supervisor would have appreciated the probability of serious injuries to immature children participating in such a dangerous pastime. It was not an innocent legitimate amusement but a performance fraught with peril to the participants. I am convinced that a nuisance in fact existed on the playground when children, for a period of upwards of three weeks prior to the time when plaintiff sustained his injuries, were hurling dangerous mis-

siles at each other, with the result that four were seriously hurt. That nuisance it was the duty of the trustees to abate. That duty was not delegable. The trustees were also charged with the duty of keeping the school house and its appurtenances "reasonably comfortable for use." That, likewise, was not a delegable duty. Plaintiff and the other pupils in the school were compelled to be on the playground during the recess period. Any one who has outgrown the credulity of childhood cannot but be impressed with the fact that this playground, conducted as it was, without safeguards or supervision, was a place of danger. Behind the scene there always lurked a threat to the health and safety of every pupil in that area.

Defendants were negligent in failing to provide adequate supervision of the playground. (*Fritz* v. *City of Buffalo*, 277 N. Y. 710.)

Much reliance is placed by defendants on the case of *Prime* v. *Board of Education of Town of Elizabethtown* (241 App. Div. 781). That case is not in point. There was no attempt there to show that the trustees had failed to make rules or regulations with regard to the supervision of children. As a matter of fact, one of the professors and the physical director of the school were present at the time of the accident. In the *Prime* case the school board had placed competent supervisors in charge of the pupils. In this case there were no supervisors.